UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

ANTHONY PEREZ,

    Petitioner,

v.

B. CURRY, Warden,

    Respondent.
                            /

No. C 08-4471 PJH (PR)

**ORDER DENYING HABEAS PETITION**

    This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to a denial of parole.

    The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition will be denied.

## BACKGROUND

    In 1986, petitioner pled guilty in Orange County Superior Court to a charge of second degree murder. He received a sentence of fifteen years to life in prison. On July 26, 2006, the Board of Parole Hearings denied him parole for the eighth time. He alleges that he has exhausted these parole claims by way of state habeas petitions

## DISCUSSION

**I.    Standard of Review**

    A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in

light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## II.     Respondent's Contentions

In order to preserve the issues for appeal respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions are contrary to Ninth Circuit law, they are without merit. *See Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128-29 (9th Cir. 2006) (the some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d)); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole.").

## II.     Petitioner's Claim

As grounds for federal habeas relief, petitioner contends that there was no reliable evidence to support the denial of parole, in light of the age of the conviction and his rehabilitation. Although petitioner phrases this as one issue, for clarity's sake the court will divide it into two parts: first, whether there was "some evidence" to support the denial, and second, whether the denial was a violation of his due process rights in view of the age of the offense and evidence of rehabilitation – what is referred to below as a "*Biggs* claim."

///

///

3

### A. "Some Evidence"

Petitioner contends that there was "no reliable evidence" that he would be a danger to society if released.

#### 1. Standard

The Ninth Circuit has held that it violates due process if parole is denied without "some evidence in the record" to support the denial or if the denial is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same). Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [parole] board." *Hill*, 472 U.S. at 455-56; *see Sass*, 461 F.3d at 1128. "[The] some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

It is now established under California law that the task of the Board of Parole Hearings and the governor is to determine whether the prisoner would be a danger to society if he or she were paroled. *See In re Lawrence*, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. *Id.* at 1205-06.

#### 2. Reliability

The Ninth Circuit stated in *McQuillion v. Duncan*, 306 F.3d 895 (9th Cir. 2002), that to comply with due process a parole denial must not only be supported by "some evidence," but it must have some indicia of reliability. *Id.* at 904. This was repeated in another parole case, *Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003). The *McQuillion*

4

court quoted and cited *Jancsek v. Oregon Board of Parole*, 833 F.2d 1389 (1987). *McQuillion*, 306 F.3d at 904.  In *Jancsek* the court held that due process requires that a parole denial be supported by "some evidence," reasoning that *Superintendent v. Hill*, 472 U.S. 445, 456 (1985), which applied that standard to prison disciplinary decisions that affected the length of the prisoner's incarceration, should apply in parole cases because grant or denial of parole also affects the length of incarceration.  *Id.* at 1390.  As relevant here, however, *Jancsek* also held, without explanation or discussion, that the "some evidence" relied upon by the Board must have "some indicia of reliability."  *Id. Jancsek*, in its turn, cited *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir.1987), a disciplinary case, in which the court was squarely presented with the question whether "some evidence" must possess some indication of reliably, and answered "yes."  *Id.* at 705.  *Cato* cited two cases from other circuits, *Mendoza v. Miller*, 779 F.2d 1287 (7th Cir. 1985), and *Kyle v. Hanberry*, 677 F.2d 1386 (11th Cir. 1982), as support.  Like *McQullion*, *Biggs*, *Jancsek*, and *Cato*, those cases did not point to a Supreme Court case that imposed a reliability requirement. *See Mendoza*, 779 F.2d at 1295; *Kyle*, 677 F.2d at 1390-91.

    None of the cases discussed above identified a Supreme Court case that imposed the reliability requirement, and this court has found none.  As a consequence, even if the evidence upon which the Board relied here did not have indicia of reliability, that lack would not be a violation of "clearly established Federal law, as determined by the Supreme Court of the United States," and thus would not be grounds for federal habeas relief.  *See* 28 U.S.C. § 2254(d).

    **3.**   **Evidence**

    The nature of the offense was one basis for the Board's conclusion that petitioner would be a danger to society if paroled.  The Board read the following description of the offense into the record, without objection:

> On July the 27th, 1985, Manuel Galvin was walking down the street that the Delhi . . . street gang claimed as their area.  Garvin approached Perez and some of the members of the Delhi gang for a cigarette.  Perez and the others inquired about what gang Galvin claimed.  He denied any gang affiliation.  Mr. Galvin states that he had a cousin who was a 'loper' . . . gang

5

member. Perez and three of the other gang members beat and kicked Galvin. Perez and his girlfriend then entered a house. While the girlfriend showered, Perez went outside to see if the police had come. Perez saw Galvin slowly walking down the street. Perez picked up a two by four board and hit Galvin in the head. Mr. Galvin fell unconscious and died of blunt force trauma to the head.

Pet., Ex. B (hearing transcript) 8.

The Board's other grounds for denying parole were that his history prior to the crime included an escalating pattern of criminal conduct and violence; that prior to the crime he had failed several previous grants of probation; that he has an "unstable social history," including "alcoholism, alcohol abuse, gang affiliation, burglary, robbery, stealing bikes, whatever it would take to make a little money to continue to live the gang lifestyle;" and that the psychological report was not "totally supportive' of release. *Id.* at 57. The Board also relied on his disciplinary history as a basis for denial. *Id.* Of these grounds, only the psychological report and the disciplinary history are not matters twenty or more years old.

As to the psychological report, the Board characterized it as "not totally supportive of release . . . in some ways inconclusive, not making a bold statement either way." Pet., Ex. B at 57. The evidence, however, is that the examining doctor concluded that petitioner had not only remorse but "some degree of empathy for the victim," his dangerousness in a controlled setting was "minimal," if released to the community his violence potential would be "low in comparison with the average inmate," and that "it seems unlikely that he will return to affiliation with street gangs and get caught up in the same set of circumstances as led to the commitment offense." *Id.* at 39. The Board's characterization of the psychological report is unsupported by what the report actually says. The psychological report is not evidence that petitioner would be a danger to society if released.

As to petitioner's disciplinary history, the Presiding Commissioner stated that the Board "relied on the following circumstances in concluding that the prisoner is not suitable for parole . . . ," and included in that list "[petitioner] has received a total of one 115 [serious rules violation report], and that was on 9/30/1997 for possession of dangerous property. It was a weapon, weapon stock. He's received seven 128s, 128As, the last one being

6

10/3/1995." *Id.* at 57.

The date for the serious rules violation report (the "115") recited by the presiding commissioner is wrong. The report in fact was on September 30, 1987, about a year after petitioner began serving his sentence, not in 1997. *Id.* at 27-28. It was for a serious offense, having material that could be used to make a weapon, but the commissioner who questioned petitioner about it found his explanation – he had only been in the new prison a day or two, and contended that the hidden iron bar belonged to someone else – "not unreasonable." *Id.* 28-29. In any event, the rules violation report was twenty years old at the time of the hearing, and the less serious write-up was more than ten years old and was for "horseplay." Petitioner's disciplinary record is not evidence that petitioner would be a danger to society if released.

The remaining facts as to petitioner's present dangerousness relied upon by the Board were the circumstances of his twenty year old crime and his background leading up to it. Although these facts are at least twenty years old, the crime itself was one of stunning brutality – an unprovoked "finish him off" blow when the victim might have had a chance of escaping the neighborhood with his life. The relevance of petitioner's life prior to the crime – the escalating criminality, alcoholism, and gang membership – is not entirely clear at this distance, but it might be taken to show that petitioner once was a particularly dangerous person who should not lightly be held to have reformed.

In addition, the denial is supported by evidence that petitioner's efforts to combat his alcoholism may not have been sincere or effective. Petitioner conceded at the hearing that when he committed the crime he was "drunk, very drunk," *id.* at 10; the psychologist diagnosed petitioner as suffering from alcoholism "in institutional remission," *id.* at 37; and despite approximately sixteen years in Alcoholics Anonymous, *id.* at 33-34, petitioner when asked by a commissioner was unable to name the eighth step of AA's twelve steps, *id.* at 35.

The court concludes that the circumstances of the crime were so brutal, so indicative of a depraved personality, that even at twenty years remove they still constitute "some

evidence" that petitioner would be a danger to society if released.  In addition, there was evidence that petitioner's purported efforts to combat his alcoholism may not have been effective.  The rejections of this claim by the state courts were not contrary to, or an unreasonable application of, clearly-established United States Supreme Court authority.

### B.   *Biggs* Claim

Part of petitioner's issue is a contention that the evidence of his dangerousness was not sufficient, "given his 21+ year old offense and his positive, post-offense prison record of rehabilitative behavior."  Pet. at 6.  Because of the reference to rehabilitation, this may be an attempt to raise a claim based on the Ninth Circuit case of *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), in which the court suggested that at some point repeated denials of parole because of the facts of the prisoner's offense, and in the face of evidence of rehabilitation, would violate due process.  *See id.* at 915-17.

In a line of relatively recent cases the Ninth Circuit has discussed the constitutionality of denying parole when the only basis for denial is the circumstances of the offense.  *See Irons v. Carey*, 505 F.3d 846, 852-54 (9th Cir. 2007);  *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006); *Biggs,* 334 F.3d at 915-17.  In *Biggs,* the court said that it might violate due process if the Board were to continue to deny parole to a prisoner because of the facts of his or her offense and in the face of evidence of rehabilitation.  334 F.3d at 916-17.  No legal rationale for this statement was provided, and it was unclear whether the court was suggesting that the continued denial of parole would be a new sort of due process violation or whether it was simply expressing the thought that with the passage of time the nature of the offense could cease to be "some evidence" that the prisoner would be a danger if paroled.  This ambiguity was helpfully cleared up in *Irons*, where the court clearly treated a "some evidence" claim as different from a "*Biggs* claim." *Irons*, 505 F.3d at 853-54.  It appears, putting together the brief discussions in *Biggs* and *Irons*, that the court meant that at some point denial of parole based on long-ago and unchangeable factors, when overwhelmed with positive evidence of rehabilitation, would be fundamentally unfair and violate due process.

As the dissenters from denial of rehearing en banc in *Irons* point out, in the Ninth Circuit what otherwise might be dictum is controlling authority if the issue was presented and decided, even if not strictly "necessary" to the decision. *Irons v. Carey*, 506 F.3d 951, 952 (9th Cir. Nov. 6, 2007) (dissent from denial of rehearing en banc) (citing and discussing *Barapind v. Enomoto*, 400 F.3d 744, 751 n. 8 (9th Cir.2005)).  Depending on whether the discussion of dictum in the dissent from denial of rehearing en banc in *Irons* is correct, it thus may be that the Ninth Circuit has recognized that due process right, which for convenience will be referred to in this opinion as a "*Biggs* claim."

Petitioner has failed to establish the predicate for his *Biggs* claim.  Petitioner's parole was not denied solely because of the circumstances of his offense, but also because of his poor pre-offense record and his lack of knowledge of the twelve-steps of the Alcoholics Anonymous program.  And in any event, assuming for purposes of this discussion that *Biggs* and *Irons* recognized an abstract due process right not to have parole repeatedly denied on the basis of the facts of one's crime and in the face of extensive evidence of rehabilitation, and also assuming arguendo that the right was violated in petitioner's case, petitioner still cannot obtain relief on this theory, because there is no clearly-established United States Supreme Court authority recognizing a "*Biggs* claim."

Petitioner here relies heavily upon the recent California Supreme Court decision *In re Lawrence*, 44 Cal. 4th 1181 (2008).  Although *Lawrence* usefully clarified that under California law the question the Board has to answer is whether the prisoner would be a danger to society if released, not whether there is evidence going to any of the many factors for suitability set out in the regulations, *id.* at 1191, *Lawrence* was not decided by the United States Supreme Court; for that reason, even if it is treated as adopting the *Biggs* analysis for due process claims, that case cannot be the basis for federal habeas relief. *See* 28 U.S.C. § 2254(d)(1) (on legal questions, habeas relief available only if state court decision was contrary to, or an unreasonable application of, clearly-established United States Supreme Court authority).

**CONCLUSION**

1    The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

2    **IT IS SO ORDERED.**

3    Dated:  April 15, 2010.

4                                                                        PHYLLIS J. HAMILTON
     United States District Judge

27   P:\PRO-SE\PJH\HC.08\PEREZ4471.RUL.wpd